IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**DENICE DE JESÚS-RODRÍGUEZ**,

   Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY**,

   Defendant.

Civil No. 19-1308 (BJM)

**OPINION AND ORDER**

    Denice De Jesús-Rodríguez ("De Jesús") seeks review of the Commissioner's finding that she is not disabled and thus not entitled to disability benefits under the Social Security Act (the "Act"). 42 U.S.C. § 423. De Jesús contends the Commissioner's decision should be reversed because the administrative law judge ("ALJ") did not properly consider her moderate limitations in maintaining concentration, persistence, or pace in the residual functional capacity ("RFC")[1] finding. Docket No. 2, 27. The Commissioner opposed. Docket No. 28. This case is before me on consent of the parties. Docket Nos. 12-14. After careful review of the administrative record and the briefs on file, and for the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

**STANDARD OF REVIEW**

    After reviewing the pleadings and record transcript, the court has "the power to enter a judgment affirming, modifying, or reversing the decision of the Commissioner." 20 U.S.C. § 405(g). The court's review is limited to determining whether the Commissioner and her delegates employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Secretary of Health & Human Services*, 76 F.3d 15, 16 (1st Cir. 1996). The Commissioner's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Ortiz v. Secretary of Health & Human Services*, 955 F.2d 765, 769 (1st Cir. 1991). "Substantial evidence

---

[1] An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 404.1520(e) and 404.1545(a)(1).

means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Visiting Nurse Association Gregoria Auffant, Inc. v. Thompson*, 447 F.3d 68, 72 (1st Cir. 2006) (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Secretary of Health & Human Services*, 819 F.2d 1, 3 (1st Cir. 1987).

A claimant is disabled under the Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when she "is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

Generally, the Commissioner must employ a five-step evaluation process to decide whether a claimant is disabled. 20 C.F.R. § 404.1520; *see Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Goodermote v. Secretary of Health & Human Services*, 690 F.2d 5, 6–7 (1st Cir. 1982). In step one, the Commissioner determines whether the claimant is currently engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If not, the disability claim is denied. At step three, the Commissioner must decide whether the claimant's impairment is equivalent to a specific list of impairments contained in the regulations' Appendix 1, which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1. If the claimant's impairment meets or equals one of the listed impairments, she is conclusively presumed to be disabled. If not, the ALJ assesses the claimant's RFC and determines at step four whether the impairments prevent the claimant from doing the work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. § 404.1520(e). If she cannot perform this work, the fifth and final step asks whether the claimant is able to perform other work available in the national economy in view of her RFC, as

well as her age, education, and work experience.  If the claimant cannot, then she is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

At steps one through four, the claimant has the burden of proving that she cannot return to her former employment because of the alleged disability.  *Santiago v. Secretary of Health & Human Services*, 944 F.2d 1, 5 (1st Cir. 1991).  Once a claimant has demonstrated a severe impairment that prohibits return to her previous employment, the Commissioner has the burden under step five to prove the existence of other jobs in the national economy that the claimant can perform.  *Ortiz v. Secretary of Health & Human Services*, 890 F.2d 520, 524 (1st Cir. 1989).  Additionally, to be eligible for disability benefits, the claimant must demonstrate that her disability existed prior to the expiration of his insured status, or her date last insured.  *Cruz Rivera v. Secretary of Health & Human Services*, 818 F.2d 96, 97 (1st Cir. 1986).

## BACKGROUND

The following is a summary of the pertinent parts of the treatment record, consultative opinions, and self-reported symptoms and limitations as contained in the Social Security transcript at ECF No. 25.

De Jesús was born on October 31, 1982, did not complete high school but took special education and vocational courses, does not communicate in English but does so in Spanish, and last worked as a fast-food restaurant cashier. On December 3, 2013, De Jesús applied for disability insurance benefits, claiming to have been disabled since September 15, 2009 (onset date) at age 26[2] due to depression, anxiety, insomnia, hypoglycemia, sinusitis, asthma, high cholesterol, kidney stones, and gastritis. She last met the insured status requirements on December 31, 2014 (date last insured) at age 32.  Social Security Transcript ("Tr.") 24, 33, 42, 46-47, 192, 200, 202, 326-334, 339, 342-344.

*Treating physicians*

**Dr. José A. Torres (general medicine)**

Dr. Torres certified that De Jesús began treatment on June 12, 2014, for diabetes mellitus, chronic lumbar pain, osteoarthritis, cervicalgia, anxiety, schizophrenia, major depression, and insomnia with mood swings. Medications were prescribed (Neurontin, Flexeril, Relafen). Dr.

---

[2] De Jesús was considered to be a younger individual (Tr. 33), and "[i]f you are a younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work." 20 C.F.R. 404.1563(c).

Torres assessed that De Jesús could not perform any work that required muscle or mental exertion. Tr. 11, 142-145.

**APS Clinics of Puerto Rico (psychiatry)**

In May 2012, De Jesús was diagnosed with major depressive disorder, single episode, moderate, and was prescribed medications. She was cooperative. Her mood was depressed. Her insight and judgment were limited. Her medical history included suicidal attempts but she was not suicidal, homicidal, or psychotic at the time. Her Global Assessment of Functioning ("GAF")[3] score was between 55 and 60. Tr. 135-136.

October 2012 notes indicate that De Jesús had missed appointments and was without treatment since June 2012. She was alert. Her thought process was logical, coherent, relevant, and oriented. Her mood was depressed and calm. Her affect, insight, judgment, appetite, and libido were adequate. Her sleep was altered. She was not suicidal or homicidal. Medications for depression and insomnia were prescribed. Her GAF score was 60. Tr. 133-134.

In January 2014, De Jesús was diagnosed with major depressive affective disorder, recurrent episode, moderate, with mental retardation. GAF score was 60. Medications were prescribed. Notes indicate that De Jesús had a history of nervous breakdowns and three suicidal attempts, trouble sleeping, increased appetite, and parents who used drugs and alcohol. She did not respond to pharmacological treatment in 2012. De Jesús was alert and oriented. Her concentration was diminished. Her thought process was logical, coherent, and relevant and her memory intact. Her judgment and insight were fair. No perceptual disorder or suicidal or homicidal thoughts were present at the time. Tr. 131-132.

March 2014 notes indicate De Jesús continued in treatment. Her thought process was logical, coherent, relevant, and oriented. Her affect was adequate. Her insight and judgment were poor. Tr. 140-141.

May 2014 notes indicate that De Jesús was stable. She was oriented. Her memory was intact. She had adequate concentration and insight, and good judgment. Tr. 137-139.

---

[3] "GAF is a scale from 0 to 100 used by mental health clinicians and physicians to subjectively rate the social, occupational, and psychological functioning of adults. A GAF score between 51 and 60 indicates 'moderate symptoms' or 'moderate difficulty in social occupational, or school functioning.'" *Hernández v. Comm'r of Soc. Sec.*, 989 F. Supp. 2d 202, 206 f.n. 1 (D.P.R. 2013)(*quoting* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000) (DSM–IV–TR)).

**INSPIRA**[4]

Dr. Rafael Miguez, psychiatrist, certified on August 14, 2017, that De Jesús received psychiatric/psychological treatment from August 10, 2015, to June 15, 2017, and remained an active patient undergoing treatment for an anxiety disorder and unspecified intellectual disabilities. Medications were prescribed (Klonopin, Restoril, Celexa). Tr. 10. She was not hospitalized. Tr. 409.

An initial INSPIRA mental health evaluation, dated August 10, 2015, indicates that De Jesús was diagnosed with depressive disorder and unspecified intellectual disabilities. She was referred to psychiatric and psychological treatment. Her symptoms included deep sorrow, frequent crying, anhedonia, insomnia, fluctuating mood, bad temper, anger, irritability, excessive anxiety and uneasiness, physical aggressiveness, and hallucinations (voices). On examination, De Jesús was hypoactive, her affect sad, her mood depressed, and her speech low. Her thought process was relevant, coherent, and logical. She was oriented in person, time, place, and situation, and presented no memory alteration. Judgment was adequate. Insight was poor. Her attention and concentration were adequate. A six-month goal was set for her to learn anger management strategies and strengths to deal with depression. Tr. 178-183, 518-523.

In November 2015, De Jesús was depressed and anxious and was diagnosed with an anxiety disorder and unspecified psychosis. Symptoms included sadness, anhedonia, low self-esteem, excessive anxiety and concern, and insomnia. As to attention and concentration, she was distracted. Her thought process was relevant, coherent, and logical. She was oriented in person, time, place, and situation, and presented no memory alteration. Judgment was adequate. Insight was poor. Suicidal or homicidal ideation was denied. Medications were prescribed. Tr. 176-177, 516-517.

The 2016 INSPIRA notes show that De Jesús did not present symptoms for depression, anxiety, obsession/compulsion, psychosis, or aggressiveness. De Jesús was cooperative but distracted (attention/concentration) and with poor impulse control. She was oriented in person, time, place, and situation. Her memory was intact. Her judgment and insight were adequate. She

---

[4] The translation of the INSPIRA record (Exhibit 9F) contains date errors. For example, the translation at Tr. 169 indicates that De Jesús' birth year is 1952, making her a 63-year-old woman. The translation at Tr. 172 does not contain the date which does appear in the original. Tr. 174 has a 2014 date which in the original document looks like a loopy handwritten 2016. Tr. 177 states 2014 when that page pertains to a 2015 progress note. Tr. 180 states the incorrect month. I verified the translation against the original record for date accuracy.

denied having suicidal or homicidal thoughts. Tr. 169-174. June 2016 notes indicate she was "excessively anxious." Tr. 172, 512.

**Centro de Salud San Lorenzo, Clínica de Terapia Física y Alivio del Dolor**

The record contains evidence of treatment for physical symptoms. Her physical limitations as found by the ALJ were not contested in this complaint. Below is a brief summary of these two treating sources.

February 2015 cervical and thoracic spine x-rays showed no acute bony pathology. Tr. 151-152. There were minimal degenerative changes in the thoracic spine. Tr. 152. A lumbosacral spine x-ray showed post-traumatic deformity of the L5. There was an acute fracture in the anterior aspect of the superior endplate of L5 and mild degenerative changes. Tr. 153.

Physical therapy notes from September and October 2016 indicate that De Jesús had acute pain in her upper back (Tr. 162-165) and in October "[t]he patient states that treatment has helped since the pain is mild and occasional. … She shows increased mobility of her neck and … bilateral trapezius has decreased. Muscle spasms, bilateral trapezius and cervical are normal … muscle strength 5/5 … She will be discharged." Tr. 147.

The hospital notes at Tr. 108-130 are illegible.

*Procedural history*

In January 2014, an interviewer noted that De Jesús had difficulty concentrating, talking, and answering. "Claimant presented low speeching difficulty and memory problems to recall dates and details. Sometimes she was confused with dates for which we almost secured estimates on work and medical history. We recommend capability due to her fragile emotional condition." Tr. 340. De Jesús reported that she stopped working because she was fired due to her disabling conditions. Tr. 344. Her blood sugar levels would drop to the point of fainting, and she suffered from anxiety, depression, nervousness, and insomnia. Tr. 63. She claimed that her conditions affected her ability to stand, walk, bend, talk, hear, remember, complete tasks, pay attention, concentrate, follow spoken instructions, and get along with others. She could follow written instructions. Tr. 70. She did not have problems getting along with authority figures unless she felt intimidated. She handled stress by sleeping. Tr. 71. Her medications did not give her side effects. Tr. 72.

She lived with her mother. She would get up at around noon, do chores like sweep and make the beds, watch television or listen to music, and go to church. She claimed needing

encouragement to do things and special reminders to take care of her personal needs and to take her medications, but she could dress, bathe, feed and use the bathroom on her own. She did not prepare her own meals because she could not remember what she needed to do. She did not need to be reminded to go places but did not drive because she'd get lost. She did not pay bills or manage savings/checking accounts. She did not socialize. Tr. 64, 67-68.

In her past job, she was cashier and had cleaning duties. Workdays and hours were flexible. She walked and stood all the time, with no sitting, climbing, crouching, kneeling, or crawling. She would sometimes handle, grab, or grasp objects (big or small), write, or reach. The heaviest she would lift was twenty pounds, frequently lifting ten pounds. She did not use machines, tools, or equipment, or use technical knowledge or skills, or need to do reports. She did not hire, supervise, or fire employees. Tr. 74-75.

During a follow-up interview in February 2014, the interviewer noted that De Jesús sounded heavily medicated. Tr. 195.

Dr. Zaida Boria, neurologist, evaluated De Jesús on March 3, 2014, and diagnosed anxiety and behavior disorder and bilateral carpal tunnel syndrome. Dr. Boria assessed that De Jesús' main handicap was her emotional condition. Physical examination was normal. A lumbosacral spine x-ray taken that day showed well-preserved lumbar lordosis, vertebral body heights, and interspace, with no evidence of fracture, dislocation, or spondylolisthesis. De Jesús could sit, stand, walk, travel, and handle and lift common things. Muscle tone and strength, range of movement, and hand function were normal. Gait was normal. Dr. Boria noted that De Jesús was alert, coherent, cooperative, and well oriented in time, place, and person. She could perform simple calculi but claimed not recalling even one of seven digits. Tr. 457-467.

Dr. Constance Chaim, psychologist, evaluated De Jesús on April 23, 2014, and diagnosed major depressive disorder, recurrent episode, moderate, with psychotic features. Prognosis was good. Psychomotor activity was normal. De Jesús was cooperative. Her general knowledge appeared to be inadequate given her age and academic level and at times she appeared to have difficulty understanding what she was being asked because of vocabulary comprehension problems. Her attention span, ability to concentrate, and thought process appeared normal. Her memory (immediate, short-term, recent, and long term) and sustained concentration were adequate. Her persistence seemed to be inconsistent; she informed that she did not end what she started but also informed that the day before the interview she completed several household chores.

De Jesús seemed capable of taking her medications on her own, completing most of her daily living tasks, and handling funds. She seemed to have difficulty handling stressors and pressure and adapting to new circumstances. De Jesús informed having no friends and hearing voices. Dr. Chaim opined that De Jesús should continue receiving her mental health treatment consistently. Tr. 473-482.

On May 5, 2022, Dr. Jesús Soto, psychologist, reviewed the record and considered Listing 12.04 for affective disorders. As to "paragraph B" criteria, Dr. Soto concluded that the evidence indicated that De Jesús had a non-severe, major depressive disorder, and that the emotional limitations were not credible to the extent alleged because the medical evidence on file did not sustain that level of symptom severity. Dr. Soto assessed that De Jesús had mild restrictions of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation, each of extended duration. Dr. Soto also found that no evidence of "paragraph C" criteria. Tr. 197-200.

The claim was denied on May 6, 2014. Tr. 56, 200, 220. De Jesús requested reconsideration and did not submit additional evidence or claim new conditions or worsening of her conditions. Tr. 26, 81-88, 203, 207, 370-373.

On July 30, 2014, De Jesús alleged being unable to pay attention, concentrate, follow instructions, finish tasks, or get along with people. She did not like routine changes. She felt in despair, forgetful, sleepless, inappetent, in a bad mood, and was always crying. People and noise upset her. Her medications made her drowsy. Tr. 81-88.

The record also contains two function reports, one prepared by a friend and another by a neighbor of De Jesús's, which state that De Jesús could care for her needs, prepare simple meals, and do some household chores. Tr. 89-105. The ALJ considered these reports in his decision at Tr. 32.

Dr. Emily Otero, psychologist, evaluated De Jesús on November 10, 2014. Tr. 184-191. Dr. Otero noted that De Jesús lived with her mother and stepfather, had a history of emotional and physical abuse, and reported suffering from the following conditions: hypoglycemia, chronic allergies, asthma, panic attacks and major depression, severe, recurrent. She was taking medications for her depression, had an inadequate relationship with her family, and denied alcohol or substance abuse. De Jesús reported not needing supervision for her hygiene habits, that she occasionally performed household chores, and sometimes needed help for money management.

Dr. Otero noted that "[t]he claimant was receptive towards the evaluation process. It was necessary to repeat the instructions. During the evaluation, she was not able to maintain an adequate level of attention span, concentration, and memory. On occasions, it was observed that she had difficulty understanding the information." Tr. 185.

Dr. Otero administered the Wechsler Adult Intelligence Scale test. The Verbal and Performance IQ test scores showed an extremely low level of functioning. The Verbal Scale test identified weaknesses in learning skills, information retention, creativity, memory, verbal concept formation, numerical reasoning, short term auditory sequential memory, attention span, ability to store and recover acquired information, and ability to understand daily living situations. The Performance Scale test identified weaknesses in concentration, reasoning, visual organization, long term visual memory, visual discrimination, speed and precision o visual-motor coordination, reasoning regarding spatial relationship problems, perceptual reasoning ability without any speed component, planning skills and anticipation of consequences, and ability to interpret social situations. Tr. 186-190.

In January 2015, Dr. Hugo Román reviewed the medical record, considered Listings 12.04 (affective disorders) and Listing 12.05 (intellectual disability), and assessed that De Jesús had severe conditions (mild intellectual disability and major depressive disorder) and that her mental functional limitations were credible but not to the degree alleged as per the evidence reviewed. For "paragraph B" criteria, Dr. Román assessed that De Jesús had moderate restrictions of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace for extended periods; and no repeated episodes of decompensation, each of extended duration. No evidence established the presence of "paragraph C" criteria. Tr. 213-214. Dr. Román proposed a "flexible/moderate MRFC" given that, despite her conditions, De Jesús "is able to perform a two-step simple command, persist at tasks for two hour intervals, interact with others, and adjust to changes." Tr. 217.

More specifically, Dr. Román assessed that De Jesús was moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. She was also moderately limited in her ability to remember locations and work-like procedures and to understand, remember, and carry out detailed instructions. She was not significantly limited in her ability to understand, remember, or carry out very short and simple

instructions; to ask simple questions or request assistance; to make simple work-related decisions; to sustain an ordinary routine without special supervision; and to work in coordination with or in proximity to others without being distracted by them or distracting them or exhibiting behavioral extremes. Tr. 215-216.

Dr. Román also pointed to instances where the record needed further development, such as evidence as to how a claimant with an IQ of 54 and of special education was able to work as a cashier despite her alleged marked intellectual limitations. Tr. 201, 208, 211-212.

The claim was denied on reconsideration on January 27, 2015, affirming the initial determination and finding that while her conditions limited her ability to perform some work-related tasks, considering her age, education level, and work experience, she possessed the mental RFC to perform simple tasks and that required less physical and/or mental effort than that required in previous jobs. Tr. 60, 201, 211, 218, 227.

De Jesús requested a hearing before an ALJ and offered no additional evidence. Tr. 230, 402.

An in-person hearing before ALJ Harold Glanville was held on May 5, 2017. Tr. 39-55. De Jesús testified that she felt strong daily pain in both her hands and feet, could not stand for very long, preferred sitting, and had trouble sleeping at night. She lived alone and her medications made her sleepy during the day, so her mother did the cleaning, cooking, and shopping for her. Her relationship with her mother, friends, and neighbors was good. She had monthly appointments with her treating pain doctor, and appointments every three months at INSPIRA for depression and nervous attacks. Tr. 43-48.

Dr. Ariel Cintrón, vocational expert ("VE"), testified that De Jesús was considered to be a young person with zero formal education who worked as a fast-food restaurant cashier from 2004 to 2009. The Dictionary of Occupational Titles ("DOT") classified that job as light physical exertion, special vocational preparation ("SVP") number of two, non-skilled, routine, repetitive. It was mainly standing and did not allow for alternating every two hours between standing and sitting, but she had a break every two hours. There was frequent fingering and continual handling and reaching. Tr. 48-51.

The ALJ asked the VE for jobs in Puerto Rico and in the national economy that a person in the following hypothetical question could perform: a young person, no education,[5] does not communicate in English, has a vocational profile of nonskilled, light work, and has the following functional limitations: light work; alternate positions between sitting and standing in two-hour intervals in an eight-hour workday; occasionally carry out bilateral fine manipulations (third part of the workday) and frequently carry out bilateral gross manipulation; occasionally climb ramps and stairs but never climb ladders, ropes, scaffolds; occasionally balance, kneel, crouch, crawl, or stoop; use her judgment to understand, remember, and carry out short, simple, and repetitive instructions and tasks; frequently respond appropriately to supervisors, coworkers, usual work situations, and changes in work routine; and frequently tend to the public. Tr. 52-53. The VE answered that she could perform the following jobs (light work, SVP of two, nonskilled, routine, repetitive): lens matcher (optical goods), laboratory sample carrier, and marker II. The VE affirmed that his testimony was consistent with the DOT and his experience as a VE. Tr. 53-54.

On June 6, 2017, the ALJ found that De Jesús was not disabled under sections 216(i) and 223(d) of the Act. Tr. 22-38. The ALJ sequentially found that De Jesús:

(1) had not engaged in substantial gainful activity since her alleged onset date of September 15, 2009, through her date last insured of December 31, 2014 (Tr. 24);

(2) had severe impairments (bilateral carpal tunnel syndrome, lumbar and thoracic spine disorders, intellectual anxiety, and depressive disorders) (Tr. 24);

(3) did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526) (Tr. 25);

(4) retained the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) except she needed to alternate positions between sitting and standing at intervals of two hours during an eight-hour workday. She could occasionally finger bilaterally; frequently handle bilaterally; occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl. She could use her judgment to understand, remember, and carry out short, simple, repetitive instructions and tasks; frequently respond appropriately to supervisors, co-

---

[5] The transcript first states "Hypothetical question. A young person who has a formal education …" but then the ALJ and the VE clarify "[s]he doesn't have an education." Tr. 52-53.

workers, usual work situations, and changes in routing work setting; and could occasionally deal with the general public (Tr. 29). She could therefore not perform past relevant work (Tr. 32) but;

(5) as per her age, education, work experience, and RFC, there were jobs with a specific vocational profile of 2 that existed in significant numbers in the national economy that De Jesús could perform (such as lens matcher, laboratory sample carrier, and marker). Tr. 33-34.

At step three, the ALJ considered Listings 1.02 (major dysfunction of a joint), 1.04 (spine disorders), 11.14 (peripheral neuropathies), and 12.00 (mental disorders). Tr. 25. Relevant to this complaint, the ALJ found that "[t]he severity of the claimant's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.04, 12.05, and 12.06." The ALJ discussed at Tr. 26-28 why the "paragraph A," "paragraph B," and "paragraph C" criteria were not satisfied and added that the RFC assessment reflected the degree of limitation found at step three. Tr. 26-28.

As to "paragraph B" criteria, the ALJ found that De Jesús did not have significant deficits in her ability to concentrate, persist, or maintain pace, as directed by Listing 12.00E3. Tr. 28. "With regard to concentrating, persisting, or maintaining pace, the claimant had moderate limitations. The clamant consistently alleged difficulties to concentrate and persist at tasks… Dr. Otero reported the claimant had some deficiencies to understand due to deficiencies in cognitive functioning … She reported the claimant had difficulties in memory and concentration … Dr. Chaim reported overall adequate memory and concentration." Tr. 26. The ALJ also noted that De Jesús "complained that she had difficulties with attention and concentration affecting her ability to follow instructions … Yet, she watches television and follow[s] instructions to complete tests to measure attention, memory and concentration." Tr. 29.

The ALJ also extensively discussed under the RFC finding the medical evidence provided by Dr. Otero, Dr. Román, Dr. Boria, and Dr. Chaim. Tr. 31-32.

On July 31, 2017, De Jesús requested that the Appeals Council review the ALJ's decision. Tr. 12, 324.

On February 9, 2019, the Appeals Council denied De Jesús's request for review, finding no basis for changing the ALJ's decision, rendering the ALJ's decision the final decision of the Commissioner. Tr. 1-5. The present complaint followed. ECF No. 2.

## DISCUSSION

De Jesús cites *Winschel* v. *Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011) and *Mascio* v. *Colvin*, 780 F.3d 632 (4th Cir. 2015) in arguing that the ALJ did not incorporate in the RFC assessment her moderate limitations in maintaining concentration, persistence, or pace. The Commissioner replied that the ALJ in this case complied with what *Winschel* and this court in *Mercado-Padilla v. Comm'r of Soc. Sec*, No. 15-2096 (BJM), 2017 WL 1379336 (D.P.R. Apr. 17, 2017), required of the ALJ, in that the ALJ explicitly incorporated the step three finding of moderate limitation in concentration, persistence, or pace into the RFC determination because the ALJ explicitly relied on Dr. Román's RFC assessment for the hypothetical question and properly limited De Jesús to short, simple, repetitive instructions and tasks.

The ALJ is required to express a claimant's impairments in terms of work-related functions or mental activities, and a VE's testimony is relevant to the inquiry insofar as the hypothetical questions posed by the ALJ to the VE accurately reflect the claimant's functional work capacity. *Arocho v. Sec'y of Health and Human Services*, 670 F.2d 374, 375 (1st Cir. 1982). In other words, a VE's testimony must be predicated on a supportable RFC assessment. *See* 20 C.F.R. § 404.1520(g)(1). An RFC assessment is "ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (*citing* 20 C.F.R. §§ 416.927(e)(2), 416.946). But because "a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Id.*

In *Winschel*, the claimant argued that the ALJ's non-disability finding was not supported by substantial evidence because the hypothetical question posed to the VE omitted the claimant's moderate limitations in maintaining concentration, persistence, and pace, despite the ALJ having found that the claimant's mental impairments caused such limitations at step two. *Winschel* found that since the ALJ did not indicate that the medical evidence suggested the claimant's ability to work was unaffected by those limitations or implicitly included them in the hypothetical question, the ALJ had a duty to explicitly include those moderate limitations in the hypothetical question posed to the VE. *Winschel*, 631 F.3d at 1181. *Mascio* distinguishes the ability to perform simple tasks from the ability to stay on task. *Mascio*, 780 F.3d at 638.

In our decision in *Mercado-Padilla*, we quoted *Winschel* and cited *Mascio* and other cases from other circuits when noting that "[c]ircuit courts have 'rejected the argument that an ALJ

generally accounts for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Mercado-Padilla*, 2017 WL 1397336 at *4*. We discussed that an ALJ should explicitly or implicitly account for limitations stemming from mental limitations in the hypothetical question. In *Mercado-Padilla*, the ALJ asked the VE to consider a person who could perform simple and routine unskilled work. Counsel for claimant explicitly asked the VE regarding attention and concentration but that testimony was implicitly rejected by the ALJ who relied on the VE's answers to the hypothetical question posed. *Id*. at *3-4. *Winschel* and *Mercado-Padilla* were both remanded so the ALJ could pose a hypothetical question to the VE that accounted for the claimant's moderate limitations in maintaining concentration, persistence, or pace.

The Commissioner also points to *Newcomb v. Colvin*, no. 15-463 (DBH), 2016 WL 3962843 (D. Me. July 22, 2016) report and recommendation adopted by *Newcomb v. Colvin*, no. 15-463 (DBH), 2016 WL 4250259 (D. Me. Aug. 10, 2016). *Newcomb* explained that "[t]he *Mascio* and *Winschel* courts recognized that an administrate law judge might be able to explain how a limitation to simple, routine tasks or unskilled work addressed a moderate limitation in concentration, persistence, or pace … '[It] is the absence of explanation … that requires remand." *Newcomb*, 2016WL 3962843 at *7.

In De Jesús's case, the ALJ found at step three that De Jesús had moderate limitations with regards to concentrating, persisting, or maintaining pace. Tr. 26. Within this case's hypothetical question, the ALJ asked the VE if a person such as De Jesús, who could use her judgment to understand, remember, and carry out short, simple, and repetitive instructions and tasks could work. The VE answered that she could do light work, SVP of two, nonskilled, routine, repetitive. Tr. 52-54. There were no questions posed by the ALJ or counsel for De Jesús specific to restrictions in her ability to maintain concentration, persistence, or pace, unlike in *Mercado-Padilla*, in which counsel explicitly asked the VE regarding attention and concentration. The VE's testimony there was implicitly rejected by the ALJ who relied on the VE's answers to the hypothetical question.

What did happen here was that Dr. Román's assessment that De Jesús could understand, remember, and carry out short, simple instructions was incorporated into the hypothetical question the ALJ posed to the VE. "The [ALJ] finds that her mental impairment does not preclude her performing simple tasks consistent with the assessment by Dr. Hugo Rom[á]n." Tr. 31.  Dr. Román, non-examining consultative psychologist, assessed that based on the record De Jesús had moderate

difficulties in maintaining concentration, persistence, or pace for extended periods. She was not significantly limited in her ability to understand, remember, or carry out very short and simple instructions or to sustain an ordinary routine without special supervision and would be able to perform a two-step simple command, persist at tasks for two-hour intervals, interact with others, and adjust to changes. Tr. 215-216.

This is what the record tells us about De Jesús ability to maintain concentration, persistence, or pace. She claimed in reports she filed in support of her disability application that her conditions affected her ability to remember, complete tasks, pay attention and concentrate, follow spoken instructions, and get along with others. Her onset date was in September 2009 and her date last insured in December 2014. During this period, De Jesús was diagnosed with depression, an anxiety disorder, and unspecified intellectual disabilities. She began psychiatric/psychological treatment in 2012. APS 2014 notes indicate that treatment kept her stable, and while her concentration was diminished in January, it was adequate in May. Her memory was intact. INSPIRA 2015 and 2016 notes indicate that her attention and concentration were at times adequate and at times she was distracted. Her memory was intact and her judgment adequate.

In January 2014, De Jesús was noted to have difficulty concentrating and recalling, and in February 2014 she sounded heavily medicated. Dr. Boria, consultative neurologist, noted on examination that De Jesús could perform simple calculi but had problems recalling digits. Dr. Chaim, consultative psychologist, assessed that De Jesús's memory and sustained concentration were adequate and her attention span and thought process appeared normal. Dr. Chaim also noted that "[h]er persistence seems to be inconsistent because she informed that she does not end what she starts but the day before the interview she completed a number of house chores. She seems capable of completing most of her daily living tasks." Tr. 480. Dr. Soto, non-examining consultative psychologist, assessed that based on the record, De Jesús had mild difficulties in maintaining concentration, persistence, or pace. Dr. Otero, consultative psychologist, noted on examination that "[i]t was necessary to repeat the instructions. During the evaluation, she was not able to maintain an adequate level of attention span, concentration, and memory. On occasions, it was observed that she had difficulty understanding the information." Tr. 185. IQ tests performed by Dr. Otero further revealed an extremely low level of functioning, identifying weaknesses in learning skills, concentration, reasoning, memory, attention span, information retention and

recovery, and ability to understand daily living or social situations. I note that observations by Dr. Boria, Dr. Chaim, and Dr. Otero, match a tendency also observable in the treatment records, that De Jesús's concentration was at times adequate and other times she was distracted. I also note from the APS and INSPIRA records that treatment from 2012 through 2016 appears to have resulted in maintaining her mental condition and symptoms at bay.

In the decision, when finding at step three that De Jesús had moderate limitations in concentration, persistence, or pace, and in discussing the evidence that supported the RFC assessment, the ALJ noted that De Jesús alleged difficulties concentrating and persisting at tasks, but that the treatment record was scant, her GAF score was for moderate symptoms, and that De Jesús and two lay witnesses reported that De Jesús had limitations in memory, concentration, intellect, and completing tasks, but that De Jesús could perform activities of daily living, such as self-care and chores. The ALJ also noted that Dr. Chaim reported overall adequate memory and concentration and a capability of completing daily living tasks, and Dr. Otero reported that De Jesús had difficulties in memory and concentration. The ALJ also pointed out that the step three severity findings were not RFC assessments but that the RFC assessment reflected the degree of limitation found at this step. Tr. 26-32.

With this analysis, I am compelled to conclude that ALJ incorporated the step three finding of moderate limitation in concentration, persistence, or pace into the RFC determination used to pose the hypothetical question to the VE.

Moderate functioning means that a claimant can fairly carry out the activity independently, appropriately, effectively, and on a sustained basis, unlike a marked limitation which means that the claimant is seriously limited in functioning in that area. 20 C.F.R., Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders; Tr. 26-27. Listing 12.00E3 explains that "[t]his area of mental functioning refers to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day." I find that the discussion above also shows that there is substantial evidence on the record to support the ALJ's mental RFC assessment and ultimate denial.

Ultimately, it is the Commissioner's responsibility to determine issues of credibility, draw inferences from the record evidence, and resolve conflicts in the evidence (*see Ortiz*, 955 F.2d at 769 (citing *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981); *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 141 (1st Cir. 1987). After thoroughly and carefully reviewing the record, I find that there is substantial evidence to support the ALJ's findings in this case.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 28th day of September, 2022.

*s/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge